## ANNA BOOREN (MRS. L. C. BRITTEN) v. GEORGE E. McWILLIAMS.

### (157 N. W. 117.)

Civil action — defendant — bias — prejudice — people — part of county — change of venue — trial — fair and impartial.

1. The fact that a number of persons in any part of the county have a bias or prejudice against the defendant in a civil action will not justify a change of venue against the objections of the adverse party, if, notwithstanding the bias and objections of such persons, a fair and impartial trial can be had in that county.

Trial court — question for — discretion — reviewed — appellate court — abuse of discretion — proof — burden of.

2. Whether this is so is primarily for the trial court to determine, and its discretion in such matters will not be reviewed or interfered with by the appellate court unless a manifest abuse of discretion has been committed. The burden of proof of such facts being upon the movent and appellant.

Opinion filed March 6, 1916.

Action for breach of promise of marriage. Appeal from order of District Court of Towner County denying motion for change of venue, *Buttz*, J.

Affirmed.

Statement of facts by Bruce, J.

This is an appeal from an order of the district court denying a motion by the defendant for a change of venue in a case of breach of promise to marry. The motion of the defendant was supported by ninety-one affidavits, though some of these were afterwards withdrawn

Note.—That an application for a change of venue on the ground that an impartial trial in a county is impossible is addressed to the discretion of the court is clearly set forth in note in 74 Am. Dec. 241, on change of venue, p. 244, discussing the particular cause herein involved.

by the signers, and counter affidavits were filed by them, which not merely stated that the former had been signed by mistake and that the maker had signed them without reading their contents and under the belief that they were merely petitions for a change of venue, and not affidavits, but which took a directly opposite position to that formerly expressed. Opposed to these affidavits and in opposition thereto, there were those of some 271 persons.

The affidavits for a change of venue largely state the same facts, though with some variation. These were that the defendant had resided in the county for more than twenty-five years; that he was the owner of a large quantity of land and carried on extensive farming operations; that the case had been twice tried and had excited much comment in the county, and had stirred up a great deal of antagonism and feeling; that numerous stories had been spread around reflecting upon his character; that the first case had been appealed to the supreme court and a new trial granted, and that the granting of this new trial had been given wide newspaper publicity; that on the second trial, in which a verdict for some $13,000 had been recovered and which was set aside on account of admitted errors of law and with the consent of both parties, the publicity attending the case was only emphasized and increased; that the defendant was a Catholic, while the plaintiff was a Protestant, and that this fact had been generally known and discussed by the people of the county, and on account of the anti-Catholic campaign made throughout said county by the issuing and publication of such literature as the "Menace," the "Yellow Jacket," and the "Pillar of Fire," etc., a strong feeling and sentiment had been created throughout the said county, and the question of the religion of said parties had so entered into the discussion of the case and the supposed facts thereof, that it had become one of apparent supreme importance in the minds of a great many people, and that generally and on account of such things that the affiant believed that a fair trial could not be had in the county.

Of the affidavits in opposition to the motion, the following is a fair sample: "The undersigned being first duly sworn each for himself, deposes and says that he is a member of the board of county commissioners of Towner county, North Dakota, and is now and has been for some years last past a resident of said county, and is well and person-

ally acquainted with all the people living in his district, and is well acquainted with all the people living in said county. That on the 20th day of November, 1914, the defendant presented a paper to affiant to sign, representing to affiant that the same was a petition for a change of place of trial of the above-entitled action from said county to some other county; that affiant did not read said paper over, and at the request and solicitation of defendant signed the same; that he did not sign said paper in the presence of any notary public or any person authorized to swear him thereto, and that no person did swear him to said paper, and that said affiant understood said paper to merely be a petition; that since the signing of said paper, affiant has been informed as to the matters stated therein; that many of said matters are not true, and affiant is making this affidavit for the purpose of correcting the same. That affiant is acquainted with the taxpayers throughout said county and those who would serve as jurors in said county; that the existence of said action has not created any abnormal or great interest in said county; that the facts of said case and the merits thereof have not been argued by the citizens of said county, and have seldom, if ever, been mentioned by said citizens, and that there is no line as between those who take sides with the plaintiff and those who take sides with the defendant; that the people in and about the city of Cando do not now and never have had much of anything to say in regard to said case, and there is no intense partisan sentiment existing among the people in and about the city of Cando as to the plaintiff and the defendant or either of them; that very few people in said county know what church defendant pretends to be affiliated with, in view of the fact that defendant seldom, if ever, attends any church, and the fact that the defendant is inclined towards the Catholic Church, or the fact that he may be a Catholic, has not been generally known and discussed by the people of said county, and that there has been no anti-Catholic campaign made in said county during the past year except such as has been made by the publication of such literature as the "Menace," the "Yellow Jacket," and the "Pillar of Fire," and that the publication of such literature has been as extensively carried on in every county of the state as it has been in Towner county, and that no strong feeling or sentiment has been created in Towner county by or on account of such literature, and that very few, if any, of the readers of such litera-

ture in Towner county give any thought thereto or permit their opinions to be in any way altered thereby, and that the people of Towner county are as a class liberal and disposed to accord to one another the right to worship as they see fit, and maintain or hold no bias or prejudice against one another on account of the mode of worship; and that the religion of the defendant has not become one of apparent supreme importance in the minds of the people of said county, or of a great many of the people in said county, or of any of the people of said county, with the possible exception of a rare individual who might be narrow upon religious questions, and who might think that the defendant is a Catholic, and who might, on that account, manifest a sentiment for or against the defendant; but that affiant says that the people of Towner county generally pay no attention to such an individual; that some of the members of the jury that tried the above-entitled action at the last trial thereof were and are active members of the Catholic Church; that at the first trial of said action, including the jury present, about 150 people were present; that some of them were qualified to act as jurors and that many of them were not qualified to act as jurors; that virtually the same people, except the jurors, attended the second trial, and that the trial of said action did not create any abnormal interest in said county or any interest that is not caused by any ordinary lawsuit; and that there has never been any public excitement in said county, or any part thereof, concerning said action, and that the defendant can have a fair and impartial trial of said action in said county, and that there is no reason to believe that the defendant cannot have a fair and impartial trial of said action in said county, or that a fair and impartial trial of said action cannot be had; and that there is no prejudice in the city of Cando or the vicinity thereof, of said county, against the defendant, or said action which would or could give reason to believe that the defendant cannot have an impartial trial of said action in said county, or that an impartial trial of said action in said county cannot be had; that said board of commissioners consists of five members, to wit, William Cunningham, John Reese, Andrew Gerrard, J. H. Henkel, and William Bradshaw; that there are twenty-eight townships in said county; that the district of said Cunningham consists of the six townships 161, 162, 163 north of ranges 65 and 66 in said county, and that

the district of said Reese consists of the six townships 161, 162, 163 north of ranges 67 and 68 in said county; and that the district of said Gerrard consists of the eight townships 159, 160 north of ranges 65, 66, 67, and 68 in said county, and that the district of said Henkel consists of the four townships 158 north of ranges 65, 66, 67, and 68 in said county, and the district of said Bradshaw consists of the four townships 157 north of ranges 65, 66, 67, and 68 in said county."

*Bangs, Netcher, & Hamilton,* for appellant.

In an application for change of venue in a civil action, on the ground of bias and prejudice on the part of a large number of the people of the county 'in which the action is pending, where the affidavits of the applicant are clear and positive in their expressions, a prima facie case is made.

The opposing deponents may, in the utmost good faith and with propriety, make their affidavits against the application, showing that no bias or prejudice exists, and that defendant can have a fair and impartial trial in said county. Still that excitement and prejudice against the defendant do exist, and affiants may not know of it, is apparent, and such rebuttal affidavits are not entitled to equal degree of credit with those of the applicant. State v. Nash, 7 Iowa, 369; Buck v. Eureka, 97 Cal. 135, 31 Pac. 845; 4 Enc. Pl. & Pr. 380; Packwood v. State, 24 Or. 261, 33 Pac. 674.

The mere fact that even a considerable number of persons in a well-populated county may affirm that no bias or prejudice exists against defendant does not establish such to be the fact, nor does it rebut the prima facie case of defendant. Richardson v. Augustine, 5 Okla. 667, . 49 Pac. 933; State v. Millain, 3 Nev. 432.

The plaintiff's evidence in this case is "weak," and "not convincing." Booren v. McWilliams, 26 N. D. 584, 145 N. W. 410, Ann. Cas. 1916A, 388.

*Cuthbert & Smythe,* and *L. H. Sennett,* for respondent.

If the objection is to the judge, he may base his decision on his own knowledge of his qualifications, on motion for change of venue. 5 Standard Enc. Proc. pp. 37, 38, and cases cited.

The appellate court will not reverse for an error not prejudicial,

nor will it disturb a finding of the trial court based upon conflicting evidence. 40 Cyc. 183, 184, and cases cited.

In such cases the burden of proof is on the moving party. 5 Standard Enc. Proc. p. 40 and cases cited; Union Mill Co. v. Prenzler, 100 Iowa, 540, 69 N. W. 876.

Where the showing is even equal, the order of the court refusing a change cannot be said to be an abuse of discretion. The abuse must be manifest. Alverson v. Anchor Mut. F. Ins. Co. 105 Iowa, 60, 74 N. W. 746, and cases cited; Croft v. Chicago, R. I. & P. R. Co. 134 Iowa, 411, 109 N. W. 725; Code Civ. Proc. § 58; Wilson's Rev. & Anno. Stat. 1903, § 4256; Horton v. Haines, 23 Okla. 878, 102 Pac. 124; Gibbert v. Washington Water Power Co. 19 Idaho, 637, 115 Pac. 924; Power v. People, 17 Colo. 178, 28 Pac. 1121; Michael v. Mills, 22 Colo. 439, 45 Pac. 429; Doll v. Stewart, 30 Colo. 320, 70 Pac. 326.

Upon this application, all the evidence for and against which is presented to the supreme court was before and considered by the trial court. In addition, the trial court was possessed of many facts and conditions as to local affairs in the county, not here presented. Clothed in this manner, the trial court denied the motion. Can it be said that this was an abuse of discretion? State v. Rooke, 10 Idaho, 388, 79 Pac. 82; Kentucky Timber & Lumber Co. v. Daniels, 21 Ky. L. Rep. 107, 50 S. W. 1097; Drake v. Holbrook, 28 Ky. L. Rep. 1319, 92 S. W. 297; Warden v. Madisonville, H. & E. R. Co. 125 Ky. 644, 101 S. W. 914; Beavers v. Bowen, 24 Ky. L. Rep. 883, 70 S. W. 195.

The facts upon such a showing must clearly justify the appellate court in reversing the lower court. Louisiana & N. W. R. Co. v. Smith, 74 Ark. 172, 85 S. W. 242.

All reasonable presumptions are in favor of the finding of a trial court. Western Coal & Min. Co. v. Jones, 75 Ark. 76, 87 S. W. 441; Sims v. American Steel Barge Co. 56 Minn. 68, 45 Am. St. Rep. 451, 57 N. W. 322; Colorado Fuel & Iron Co. v. Four Mile R. Co. 29 Colo. 90, 66 Pac. 902; Northeastern Nebraska R. Co. v. Frazier, 25 Neb. 42, 40 N. W. 607.

BRUCE, J. (after stating the facts as above). The question to be determined in this case is whether the trial court committed an abuse of its discretion in refusing a change of venue under the provisions of

the statute (Comp. Laws 1913, § 7418) which permits such a change "if there is reason to believe that an impartial trial cannot be had" in the county. We are satisfied that no such abuse of discretion occurred. It is, of course, well established that the matter is discretionary with the trial court, and that such discretion will not be reviewed or interfered with unless there has been a manifest abuse thereof, and that the burden of proof is upon the movent and appellant to make this fact apparent to the appellate court. Croft v. Chicago, R. I. & P. R. Co. 134 Iowa, 411, 109 N. W. 725; 40 Cyc. 165; 4 Standard Enc. Proc. p. 40; State v. Gordon, 32 N. D. 31, 155 N. W. 59; Power v. People, 17 Colo. 178, 28 Pac. 1121; Michael v. Mills, 22 Colo. 439, 45 Pac. 429; Gibbert v. Washington Water Power Co. 19 Idaho, 637, 115 Pac. 924; Horton v. Haines, 23 Okla. 878, 102 Pac. 124.

"The reason for this rule is obvious. Whether a change of venue is necessary to obtain a fair and impartial trial is not a question of law, but of fact. A judge on the spot, viewing all the circumstances, and having knowledge of persons, facts, and influences, is much better qualified than is an appellate court at a distance, with only *ex parte* affidavits before it to determine the fact whether or not it is true that the defendant cannot have a fair trial by an impartial jury in the county in which he is indicted or in which the plaintiff has commenced his suit." 4 Enc. Pl. & Pr. 499–502.

Generally the courts hold that no abuse of discretion will be presumed or inferred where there are conflicting affidavits. Generally the rule seems to be that the fact that a number of persons in any particular county have a bias or prejudice against the defendant will not justify a change of venue against the objections of the adverse party, if, notwithstanding the bias or prejudice of such persons, a fair and impartial trial can be had in that county, and this matter is primarily for the trial court to determine. Northeastern Nebraska R. Co. v. Frazier, 25 Neb. 42, 40 N. W. 605; State v. Gordon, 32 N. D. 31, 155 N. W. 59. In the case at bar, it is true that there are a number of affidavits which claim that the defendant cannot have a fair trial in the county. The counter affidavits, however, show that only some 150 persons were present at the former trial. They deny that the matter has created general excitement throughout the county as a whole. They deny that prejudice extends throughout the county. They call atten-

tion to the fact that as far as the anti-Catholic papers are concerned, their publication is just as extensive in the other counties of North Dakota as in Towner county. They are signed by persons from all over the county. Some of the signers are persons who are peculiarly qualified to know the facts, being the mayor and marshal of Cando, two of the county commissioners, and the sheriff. All these matters were peculiarly within the knowledge of the district judge, and were competent for him to consider. We are not inclined to interfere with his discretion and judgment in the matter, or to hold that the showing was made that a fair trial could not be obtained.

The order of the District Court is affirmed.